**HIRALDO P.A.**
Manuel Hiraldo, Esq.
(*pro hac vice* to be filed)
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
MHiraldo@Hiraldolaw.com
Telephone: 954-400-4713

**THE LAW OFFICES OF JIBRAEL S. HINDI**
**Jibrael S. Hindi, Esq.**
(*pro hac vice* to be filed)
E-mail: jibrael@jibraellaw.comz
**Thomas J. Patti, Esq.**
(*pro hac vice* to be filed)
E-mail: tom@jibraellaw.com
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301
Phone: 954-907-1136
Fax: 855-529-9540

**LAW OFFICES OF MARSHALL E. ROSENBACH**
Marshall Rosenbach, Esq. (SBN 214214)
468 N. Camden Drive, Suite 200
Beverly Hills, CA 90210
marshall@marshallrosenbach.com
Telephone: 310-860-4764
Fax: 561-694-1359

*Counsel for Plaintiff and Proposed Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANA BARBIERI, individually and on behalf of all others similarly situated,<br><br>       *Plaintiff,*<br><br>vs.<br><br>AEG PRESENTS SE, LLC,<br><br>       *Defendant.* | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227, ET SEQ. (TCPA)**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

## CLASS ACTION COMPLAINT

Plaintiff Adriana Barbieri brings this class action against Defendants AEG Presents SE, LLC ("AEG"), and alleges upon personal knowledge, experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA").

2.      The case arises from Defendant's co-promotion of a music event in 2019. To promote that event, Defendant engaged in unsolicited text messaging with no regard for privacy rights of the recipients of those messages.

3.      Defendant caused thousands of unsolicited text messages to be sent to the cellular telephones of Plaintiff and Class Members, causing them injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

4.       Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, including any attempts by Defendant in the future to promote their events using unsolicited text messages. Plaintiff also seeks statutory damages on behalf of herself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendants.

## PARTIES

5.      Plaintiff is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39), a citizen and resident of Broward County, Florida, and the subscriber and/or sole user of the cellular telephone number ending in 5156 (the "5156 Number").

6.      Defendant AEG is a Delaware limited liability company, with a principal address of 800 W. Olympic Blvd, Ste. 305, Los Angeles, California 90015.

**CLASS ACTION COMPLAINT**

**JURISDICTION AND VENUE**

7.     This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

8.     This Court has subject matter jurisdiction over this action pursuant to 47 U.S.C. § 227(b)(3).

9.     Defendant is subject to general personal jurisdiction in California because its principal place of business is in California and, more specifically, in this District.

10.    Defendant is subject to specific personal jurisdiction in California because this suit arises out of and relates to Defendant's significant contacts with California, including the co-promotion of a music event that Defendant organized and planned from its headquarters in California.

11.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because a substantial part of Defendant's actions and omissions which gave rise to the claims asserted in this action occurred, in part, in this District.

**THE TCPA**

12.    The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

13.    The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

14.    It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii). "A text message to a cellular

telephone qualifies as a 'call' within the meaning of the TCPA." *Thomas v. Peterson's Harley Davidson of Miami, L.L.C.*, 363 F. Supp. 3d 1368, 1371 (S.D. Fla. 2018).

15.    The TCPA exists to prevent communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

16.    In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

17.    The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

18.    A defendant must demonstrate that it (the defendant) obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls"). Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)'").

## FACTS

19.    Prior to September 2019, Defendant entered into an agreement with Awesome Promoters, LLC ("Awesome") to co-promote a music event for the band

**CLASS ACTION COMPLAINT**

Deadbeats to take place in Pompano, Florida on October 19, 2019 (the "Deadbeats Event").

20.     Upon information and belief, it was the intention of Defendant and Awesome to act jointly and cooperatively in the promotion, marketing, and execution of the Deadbeats Event, which included a joint right of control and/or joint proprietary interests in the event.

21.     Upon information and belief, Defendant's co-promotion agreement for the Deadbeats Event included a duty to share in the profits and losses of the Deadbeats Event with Awesome.

22.     Awesome's role was to provide marketing services for the event, which included the text messages received by Plaintiff and Class Members.

23.     The subject text messages were sent for the benefit of Defendant and Awesome, i.e., to promote the Deadbeats Event from which Defendant and Awesome were attempting to earn a profit.

24.     Defendant was aware and understood that Awesome's marketing program for the Deadbeats Event would include the transmission of the text messages at issue in this case.

25.     Upon information and belief, Defendant was, at all times relevant, aware of Awesome's text message marketing activities for the Deadbeats Event.

26.     Upon information and belief, Awesome's acts complained of herein were known, consented to, and/or ratified by Defendant.  Further, Defendant knowingly received and retained monetary benefit from Awesome's unlawful telemarketing practices alleged herein.

27.     On or about September 12, 2019 and October 9, 2019, Awesome, pursuant to its co-promotion agreement and joint venture with Defendant, sent the following unsolicited text messages to Plaintiff's cellular telephone ending in 5156 (the "5156 Number"):

**CLASS ACTION COMPLAINT**

28.     The purpose of the above text messages was to market and solicit Plaintiff to attend the Deadbeats Event.

29.     Plaintiff has never provided Defendant with her telephone number for any reason.

30.     Plaintiff has never knowingly released her telephone number to Defendant.

31.     Plaintiff has never had any type of business relationship with Defendant.

32.     Plaintiff did not contact Defendant for any reason prior to receiving the subject text message solicitations.

33.     Plaintiff has never provided Defendant with any type of permission to contact her on her cellular telephone, including any form of express consent or express written consent.

34.     Plaintiff did not invite the subject text message solicitations.

35.     Plaintiff is the sole user and/or subscriber of the 5156 Number.  Plaintiff uses the 5156 Number for personal non-business purposes.

36.     Plaintiff's 5156 Number has been on the National Do Not Call Registry

since May 20, 2017.

37.    The number used by or on behalf of Defendant to transmit the subject text message solicitations (545-454) is known as a "short code." Short codes are short digit sequences, significantly shorter than telephone numbers, that are used to address messages in the Multimedia Messaging System and short message service systems of mobile network operators.

38.    Text messages using a short code can only be sent using a computer, and cannot be sent using a traditional telephone.

39.    The impersonal and generic nature of the subject text messages, coupled with the fact that they originated from a short-code, demonstrates that Awesome utilized an automatic telephone dialing system in transmitting the messages.

40.    To send the text messages, Awesome used a messaging platform owned and operated by Express Text, LLC (the "Platform") that permitted the transmission of thousands of automated text messages without any human involvement.  On its website, Express Text boasts that its platform has been utilized to transmit "over 4 billion messages…and counting."

41.    The Platform has the capacity to store telephone numbers.

42.    The Platform has the capacity to generate sequential numbers.

43.    The Platform has the capacity to dial numbers in sequential order.

44.    The Platform has the capacity to dial numbers from a list of numbers.

45.    The Platform has the capacity to dial numbers without human intervention, including an "Auto-Replies" function, described by Express Text "as text autoresponders… automated text messages that your customers receive after sending your keyword to a short code. You can send them offers, reply with links, ask questions and much more," and "Birthday Texts" which operate by "automatically" transmitting text messages through a "set it and forget it" automation function.

46.    The Platform also has a "Text Message Scheduling" function, described

**CLASS ACTION COMPLAINT**

by Express Text as a "feature to send your message when you're not there. You can send messages weekly, daily, monthly or even on specific holidays. Select the time zone and review the messages that you have scheduled in your account's calendar."

47.   Upon information and belief, to transmit the text messages at issue, the Platform automatically executed the following steps: [1] The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed; [2] The Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content; [3] Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers; and [4] Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendants.  Each mobile carrier then sent the message to its customer's mobile telephone.

48.   The above execution of instructions occurred seamlessly, with no human intervention, and almost instantaneously.  Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

49.   The subject text message solicitations invaded Plaintiff's privacy, intruded upon her seclusion and solitude, constituted a nuisance, and wasted Plaintiff's time by requiring them to interact with the messages.

## CLASS ALLEGATIONS

50.   Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, individually and on behalf of all others similarly situated.

### *PROPOSED CLASS*

**CLASS ACTION COMPLAINT**

51.    Plaintiff brings this case on behalf of the following classes (collectively, the "Class"):

> **No Consent Class**:  **All persons within the United States who, within the four years prior to the filing of this lawsuit; were sent a text message; by or on behalf of Defendant; to said person's cellular telephone number; using the same text messaging platform utilized to text message Plaintiff; for the purpose of advertising and/or promoting the Deadbeats Event.**

> **Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action (1) were sent text messages by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of advertising and/or promoting the Deadbeats Event.**

52.    Defendant and its employees or agents are excluded from the Class.

53.    Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

## *NUMEROSITY*

54.    Upon information and belief, Defendant, through Awesome, has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

55.    The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery.  Identification of the Class

**CLASS ACTION COMPLAINT**

members is a matter capable of ministerial determination from Defendants' call records.

## COMMON QUESTIONS OF LAW AND FACT

56. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are: [1] Whether Defendant, through Awesome, made non-emergency calls to Plaintiff and the Class Members' cellular telephones using an ATDS; [2] Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls; [3] Whether Defendant's conduct was knowing and willful; [4] Whether Defendants is liable for damages, including under theories of vicarious and/or joint venture liability; [5] The amount of such damages; and [5] Whether Defendant should be enjoined from such conduct in the future.

57. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant, through Awesome, transmitted text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

58. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## PROTECTING THE INTERESTS OF THE CLASS MEMBERS

59. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

## SUPERIORITY

60. A class action is superior to all other available methods for the fair and

**CLASS ACTION COMPLAINT**

efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

61.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATIONS OF 47 U.S.C. § 227(b)**
*On Behalf of Plaintiff and the No Consent Class*

62.     Plaintiff re-alleges and incorporates paragraphs 1-61 as if fully set forth herein.

63.     Defendant acting vicariously or jointly with Awesome – or third parties directed by Defendant and/or Awesome – used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class. These calls, or more precisely, *text messages*, were sent without regard to whether Defendant had first obtained express permission from the called party to send such text message. In fact, Defendant did not have prior express consent

to text the cell phones of Plaintiff or the other members of the putative Class when such text messages were sent.

64.    Defendant is vicariously liable and/or liable as a joint venturer for Awesome's conduct.  *See Klein v. Just Energy Grp., Inc.*, Civil Action No. 14-1050, 2016 U.S. Dist. LEXIS 84447, at *27 (W.D. Pa. June 29, 2016) (citing *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 674 (2016) ("The United States Supreme Court in *Campbell-Ewald Co. v. Gomez* held that a party may be liable under the TCPA in accordance with tort-related vicarious liability rules.")); *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois, N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C.R. 6574, 6588 (2013); *Cellco P'ship v. Plaza Resorts Inc.*, No. 12-81238-CIV, 2013 WL 5436553, at *6 (S.D. Fla. Sept. 27, 2013); *Keim v. ADF Midatlantic, Ltd. Liab. Co.*, No. 12-80577-CIV, 2015 U.S. Dist. LEXIS 159070 (S.D. Fla. Nov. 9, 2015) (denying motion to dismiss TCPA complaint, and holding that plaintiff sufficiently alleged a theory of joint venture); *Mey v. Honeywell Int'l, Inc.*, Civil Action No. 2:12-1721, 2013 U.S. Dist. LEXIS 45265 (S.D. W. Va. Mar. 29, 2013) (same); *Newbold v. State Farm Mut. Auto. Ins. Co.*, No. 13 C 9131, 2015 U.S. Dist. LEXIS 194101 (N.D. Ill. Jan. 23, 2015) (denying motion to dismiss TCPA claim and holding that "[t]o the extent that partners or joint venturers are pursuing the objectives of their mutual enterprise, they can be deemed agents of that enterprise.").

65.    Indeed, as stated by the FCC:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case [, and is the case here]. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically

places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois, N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C.R. 6574, 6588 (2013), 28 F.C.C.R. 6574, at 6588, ¶ 37.

66.     Thus, Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

67.     As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the No Consent Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the No Consent Class are also entitled to an injunction against future calls. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of No Consent Class.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the No Consent Class, and against Defendant that provides the following relief: **[1]** Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful; **[2]** A permanent injunction prohibiting Defendant from violating the TCPA in the future through calling or texting cell phones using an automatic telephone dialing system; **[3]** A declaration that Defendant used an automatic telephone dialing system and violated the TCPA in using such to call or text the cell phones of

**CLASS ACTION COMPLAINT**

Plaintiff and the No Consent Class; and **[4]** Any other relief the Court finds just and proper.

## COUNT II
## <u>VIOLATION OF 47 U.S.C. § 227(c)</u>
*On Behalf of Plaintiff and the Do Not Call Registry Class*

68.     Plaintiff re-alleges and incorporates paragraphs 1-61, and as if fully set forth herein.

69.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

70.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers." 47 C.F.R. § 64.1200(e); *see also Stevens-Bratton v. Trugreen, Inc.*, No. 2:15-2472, 2020 U.S. Dist. LEXIS 17783, at *14 (W.D. Tenn. Feb. 4, 2020) ("the FCC made clear that 'residential subscriber' can include 'wireless subscribers' because 'it is well-established that wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones.'…. A cellular telephone can satisfy the 'residential telephone subscriber' element of § 64.1200(c) & (d).") (citing *Hodgin v. Parker Waichman LLP*, No. 3:14-cv-733-DJH, 2015 U.S. Dist. LEXIS 192262, 2015 WL 13022289, at *3 (W.D. Ky. Sept. 30, 2015); *United States v. Dish Network, LLC*, 75 F. Supp. 3d 942, 946 (C.D. Ill. 2014); *Phillips v. Mozes, Inc.*, 2:12-cv-04033-JEO, 2014 U.S. Dist. LEXIS 190729, 2014 WL 12589671, at *6 (N.D. Ala. Sept. 3, 2014)).

71.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation

14

**CLASS ACTION COMPLAINT**

of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

72.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

73.     Defendant is vicariously liable and/or liable as a joint venturer for Defendant Awesome's conduct. *See Klein v. Just Energy Grp., Inc.*, Civil Action No. 14-1050, 2016 U.S. Dist. LEXIS 84447, at *27 (W.D. Pa. June 29, 2016) (citing *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 674 (2016) ("The United States Supreme Court in *Campbell-Ewald Co. v. Gomez* held that a party may be liable under the TCPA in accordance with tort-related vicarious liability rules.")); *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois, N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C.R. 6574, 6588 (2013); *Cellco P'ship v. Plaza Resorts Inc.*, No. 12-81238-CIV, 2013 WL 5436553, at *6 (S.D. Fla. Sept. 27, 2013); *Keim v. ADF Midatlantic, Ltd. Liab. Co.*, No. 12-80577-CIV, 2015 U.S. Dist. LEXIS 159070 (S.D. Fla. Nov. 9, 2015) (denying motion to dismiss TCPA complaint, and holding that plaintiff sufficiently alleged a theory of joint venture); *Mey v. Honeywell Int'l, Inc.*, Civil Action No. 2:12-1721, 2013 U.S. Dist. LEXIS 45265 (S.D. W. Va. Mar. 29, 2013) (same); *Newbold v. State Farm Mut. Auto. Ins. Co.*, No. 13 C 9131, 2015 U.S. Dist. LEXIS 194101 (N.D. Ill. Jan. 23, 2015) (denying motion to dismiss TCPA claim and holding that "[t]o the extent that partners or joint venturers are pursuing the objectives of their mutual enterprise, they can be deemed agents of that enterprise.").

74.     Indeed, as stated by the FCC:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third

**CLASS ACTION COMPLAINT**

parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case [, and is the case here]. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois, N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C.R. 6574, 6588 (2013), 28 F.C.C.R. 6574, at 6588, ¶ 37.

75.      Thus, Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class members were sent more than one text message in a 12-month period by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200.

76.      As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**WHEREFORE**, Plaintiff requests the Court to enter judgment in favor of Plaintiff and the Do Not Call Registry Class, and against Defendant that provides the following relief: [1] Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful; [2] A permanent injunction prohibiting Defendant from violating the TCPA in the future through calling or texting cellular telephone

**CLASS ACTION COMPLAINT**

numbers that have been registered on the Do Not Call Registry; [3] Any other relief the Court finds just and proper.

## JURY DEMAND

Plaintiff, respectfully, demands a trial by jury on all issues so triable.

DATED: April 29, 2020                        Respectfully submitted,

By:    */s/ Marshall Rosenbach*
MARSHALL E. ROSENBACH
**LAW OFFICES OF MARSHALL E. ROSENBACH**
Marshall Rosenbach, Esq. (SBN 214214)
468 N. Camden Drive, Suite 200
Beverly Hills, CA 90210
marshall@marshallrosenbach.com
Telephone: 310-860-4764
Fax: 561-694-1359
*Counsel for Plaintiff and the Proposed Class*

**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
(*pro hac vice* to be filed)
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
MHiraldo@Hiraldolaw.com
Telephone: 954-400-4713

**THE LAW OFFICES OF JIBRAEL S. HINDI**
**Jibrael S. Hindi, Esq.**
(*pro hac vice* to be filed)
E-mail: jibrael@jibraellaw.com
**Thomas J. Patti, Esq.**
(*pro hac vice* to be filed)
E-mail: tom@jibraellaw.com
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301
Phone: 954-907-1136
Fax: 855-529-9540

**CLASS ACTION COMPLAINT**